THE CASCO MANUFACTURING COMPANY *vs.* THOMAS DIXON & another.

In an action on the case, brought by the buyer of cotton in bales, against the seller, for a false and fraudulent packing thereof, without the knowledge of the latter, the defendant was allowed to give evidence of the existence of a general usage in the cotton trade, relative to the liability of the seller in such cases: And a

The Casco Manufacturing Company *v.* Dixon & another.

usage being established accordingly, that, in order to entitle the buyer to an indemnity, it was incumbent on him to give the seller notice of the fraud, as early as circumstances would admit of, after the discovery of the false packing; to afford the seller an opportunity to examine the cotton, either in bulk or by sample; and, to furnish him with evidence of the identity of the bags alleged to be so packed, and of the marks and numbers thereon: It was held, that the plaintiff, having used up the cotton, without preserving the marks and numbers of the bags in which it was packed, or affording the defendant an opportunity to examine it, or giving him any notice of the false packing, until six months after the discovery of the fraud, was not entitled to recover.

THIS was an action on the case, containing three counts. In the first, it was alleged, that the plaintiffs bought sixty-five bales of cotton of the defendants, which the latter promised should be like to and as good as certain samples exhibited by them; whereas the defendants deceived and defrauded the plaintiffs in this, that the cotton was deceitfully packed and bound up, and a large portion of it was not like to or as good as the samples, but poor, fraudulently packed, and of little or no value. The second count differed from the first, in merely alleging, that a large quantity of the cotton, at the time of the purchase, was not equal to the samples, but poor and of little value. The third alleged the sale to have been made with a warranty, that the cotton was middling, fair cotton, &c., but that it was of inferior quality, and of little or no use to the plaintiffs. The writ was dated September 10th, 1845.

The defendants pleaded the general issue, and filed a specification of defence, in which, amongst other matters, it was alleged, that if the cotton was falsely packed, the plaintiffs were bound by law and usage to give immediate notice thereof to the defendants, with the usual and proper proofs of the amount of damage and false packing, and with certificates of the planters' marks and shipping marks, and with other information, by means of which the defendants could make reclamation; all of which was omitted to be done until about nine months after the sale, when the cotton had been used up, and the bags and marks destroyed; by reason of which negligence and delay on the part of the plaintiffs, the defendants, if otherwise liable for any damages, were entirely

deprived of all recourse to the persons, by whom the false packing, if there was any, was done.

It appeared in evidence, on the trial, which was before *Wilde*, J., that the sale was made by the intervention of a broker, who acted therein for the defendants, by whom his commissions were paid; that the broker took samples of the cotton from the defendants, and exhibited them to the plaintiffs' agent, who made the purchase by the samples shown him; that the broker, at the request of the agent, drew other samples and exhibited them to him; that the cotton was bought by the shippers' marks; and that there might have been four or five different planters' marks upon it.

It was also in evidence, on the part of the plaintiffs, that the cotton was falsely packed, being of a much inferior quality in the interior of the bales to what it was externally and to the samples; that the cotton was discovered to be falsely packed, upon the plaintiffs' beginning to open it, immediatel after the purchase, which was on the 4th of November, 1844; that the plaintiffs went on opening and using it until May, 1845, when the last of it was worked up; that the bags in which the cotton had been packed, and which had the planters' and other marks upon them, were put into the plaintiffs' storehouse; since which the plaintiffs could not tell what had become of them, though the bags were commonly sold or used to pack waste.

The defendants contended, upon this evidence: 1. That the action was for deceit, and could not be maintained, without proof of a knowledge of the fraud, on the part of the defendants; 2. That if the action was not for deceit, a sale by sample was not a warranty against an unknown and invisible defect; and, 3. That the plaintiffs, by retaining the cotton and using it, and suffering an interval of six months to elapse without notifying the defendants of the fraud, or offering to return the cotton, had waived their right to object to the alleged fraudulent packing.

But the judge, for the purposes of the trial, ruled upon these points against the defendants; who then proceeded

with their defence, and introduced and examined witnesses to prove the usage set forth in their specification. This evidence was admitted against the objection of the plaintiffs.

The case was thereupon taken from the jury, and submitted to the whole court upon the evidence relative to the usage, which was reported at length for that purpose. If the court should be of opinion, that the evidence proved a usage, which was by law admissible, and constituted a sufficient defence to the action, the plaintiffs are to be nonsuited ; otherwise the court is to dispose of the case as the law requires.

This evidence being submitted to the court, for them to decide thereupon as to the existence of the usage in question, as a matter of fact, and the result being stated in the opinion of the court, it is deemed unnecessary to insert the testimony in detail.

*B. R. Curtis,* for the plaintiffs.

*C. W. Loring,* (with whom was *C. G. Loring,*) for the defendants.

SHAW, C. J. This is an action on the case, to recover damages for the loss sustained on a parcel of cotton, purchased of the defendants by the plaintiffs, in consequence of fraud in the bales being falsely packed. The sale is alleged to be a sale by sample. On the facts stated, it is questionable, whether the sale was a sale by sample, in the sense in which that term is commonly used. But it is not necessar* to decide that question.

1. The first question to be considered is, whether the evidence of usage, offered by the defendants, was admissible. Evidence of a general usage, in regard to a branch of trade, is ordinarily admissible. All persons dealing in any branch of business are presumed to be acquainted with any usage affecting it, and are presumed to intend to deal in reference to it. Such a usage is evidence of what is reasonable ; that is, of what is suitably adapted to secure both parties in their rights.

The evidence of usage, in the present case, is derived from several witnesses, and though they state considerable diversity of practice, as to the mode of adjusting claims of this

description for indemnity, yet they are agreed in one thing, namely: That in order to establish a claim for indemnity, it is necessary, 1. That notice should be given by the buyer to the seller, as early as circumstances will admit of after the discovery of the false packing; 2. That opportunity should be afforded to the seller, or his agents, to examine the alleged falsely packed bales, in bulk or by samples, by themselves or agents; and, 3. That the buyer should furnish the seller with authenticated surveys, certificates, or other legal proofs of the identity of the bags alleged to be falsely packed, with the marks and numbers thereon, and especially the planter's marks.

2. We are thus brought to examine the grounds of this action. The plaintiffs disclaim charging the sellers with any knowledge of the false packing; nor is there the slightest evidence of it. From the nature of the fraud, it could only be discovered on opening the bags for use. The action, therefore, can only be sustained on the ground of an implied warranty, arising out of the nature of the transaction, and of the commodity; the place and manner of its growth, production and packing for market; and its transportation from the place of growth to the place of manufacture. Such warranty is an implication of what the law will reasonably infer, as to the intent and understanding of parties buying and selling under the circumstances.

It is not easy, perhaps not practicable, to examine the bags through, at the time of sale. It may be reasonably implied, that the seller intends to sell, and the buyer to purchase, cotton like that which appears on the surface, or that which the sample, drawn in the usual way, exhibits; and if, instead of such cotton, there shall be found stones, or cotton seed, or very inferior cotton, the seller will make an allowance, either by substituting other cotton, by rescinding the contract, and taking back the article, or by paying the difference in money.

But as this is an implication arising out of the nature of the transaction, for the reasonable security of the buyer, it may, by the same reasonable implication, be limited and

qualified by such conditions, as are reasonably necessary to the safety and security of the seller.

Cotton is raised in a warmer climate than ours, and in distant states, and packed and baled in the interior of the country, commonly by planters, by whom considerable quantities are raised. It is thence transported by land to a seaport, and thence by ship to other ports, and sold by merchants who have bought in quantities to sell again; or, perhaps, more commonly, it is sold by consignees.

From this view of the circumstances, several conclusions are obvious : —

1. That the seller cannot know of the supposed defects until the bags have passed out of his hands, and gone to the manufacturer's to be opened and used.

2. That if the bales are falsely packed, it is reasonable that the party buying should have a remedy against the seller ; and it is not less reasonable that such seller, equally ignorant and innocent of the fraud, should have the like remedy, both against his vendor or consignor, and so through the whole series.

3. That such remedy can only be available to him, in case he has seasonable notice of the fraud, and is furnished with such authentic evidence, as shall enable him and his vendors and consignors to go back to the author of the fraud, that is to say, the planter by whom or by whose agents and servants, for whom he is responsible, the fraud was committed.

4. It is therefore a reasonable qualification and condition of the seller's responsibility, and of the buyer's right to in-demnity, that the latter shall give the former such notice, and furnish him with such proofs and means of recourse; and this is required alike by public policy and the plain dictates of justice. The same reasonable considerations, which create the implied obligation, limit and qualify it; and, without a compliance with such reasonable considerations, the buyer is not entitled to the indemnity claimed.    *Plaintiffs nonsuit.*